UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY L. BEALS,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 2:16-cv-0008 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born October 29, 1963, applied on May 15, 2012 for SSI, alleging disability beginning July 1, 2004. Administrative Transcript ("AT") 84. Plaintiff alleged he was unable to work due to seizure disorder, anxiety, migraines, back injury, and several other conditions. AT

////

////

84. In a decision dated June 18, 2014, the ALJ determined that plaintiff was not disabled.[1] AT 17-28. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of <u>July 1, 2004 through his date last insured of December 31, 2009</u>.
>
> 3. Through the date last insured, the claimant had the following severe impairments: seizures and migraines.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work. Due to his seizure activity, he could never climb ladders, ropes or scaffolds. He had to avoid working near hazards (machinery, heights, etc.).

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on October 29, 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has at least a high-school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because applying the Medi-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2004, the alleged onset date, through December 31, 2009, the date last insured.

AT 19-27.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erroneously ignored opinions from a treating psychologist regarding limitations caused by plaintiff's mental health impairments; (2) the ALJ erred by finding multiple impairments non-severe at step two and failing to include their associated limitations in the RFC; (3) the ALJ erred by failing to procure testimony from a vocational expert at step five; (4) the ALJ erred by failing to address the side effects from plaintiff's medications.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

     A. Dr. Burns's Opinion

Plaintiff asserts that the ALJ erred by ignoring the medical opinion of Dr. Bruce Burns, a psychiatrist at Kaiser Permanente who first saw plaintiff on May 27, 2010 and last saw him on April 9, 2012. AT 1556, 1559. In a February 18, 2014 functional capacity report concerning plaintiff's mental health, Dr. Burns noted that plaintiff was "first seen on 6/21/05." AT 1556 In the 2014 report, Dr. Burns diagnosed plaintiff with dysthmia and anxiety disorder and rated his ability to relate to coworkers, deal with the public, interact with supervisors, and deal with work stress as "poor." AT 1556-1557. The report further indicated that plaintiff was being treated with Zoloft for depression and had shown "minimal response," and that his treatment was

4

"complicated by his father's illness and death." AT 1556. Dr. Burns described his prognosis was "guarded." AT 1556.

The ALJ did not address Dr. Burns's report. At step four, the decision stated: "As for the opinion evidence, none of the claimant's treating physicians have provided a medical source statement indicating his inability to function prior to the last date insured" – i.e., December 31, 2009. AT 26. Defendant argues that, because Dr. Burns did not begin seeing plaintiff until five months after the relevant time period ended, his report did not bear on plaintiff's functional ability during that period and thus did not need be specifically addressed. See Howard v. Barhnart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.").

Plaintiff acknowledges that, while the medical evidence includes referrals for psychological treatment, there are no psychological treatment reports in the record. As the ALJ stated: "The record does not document any longitudinal mental health treatment prior to December 31, 2009."[2] AT 22. As the ALJ reasonably discounted psychological opinions outside the relevant time frame, the court finds no error.

B. Non-Severe Impairments

Plaintiff contends that, in the determination that plaintiff suffered from two severe impairments (seizures and migraines), the ALJ improperly found two other impairments (anxiety and dysthymia disorder) non-severe. Plaintiff further contends that the ALJ failed to include any limitations associated with plaintiff's non-severe conditions in the RFC determination.

1. Mental impairments

At step two, the ALJ found that plaintiff's "alleged depression, anxiety, and intellectual delay were not severe mental impairments." AT 22. The ALJ continued:

> The record does not document any longitudinal mental health treatment prior to December 31, 2009. The record shows that on October 18, 2006, he was depressed due to his father's death.

---

[2] At the hearing, the ALJ asked plaintiff's counsel about additional records and held the record open after the hearing to receive any such records, thus meeting the duty to develop the record. AT 36, 75-77.

5

> There is no medical evidence of mental health treatment prior to December 31, 2009. . . . Based upon observations of current behavior and reported psychiatric history, the claimant's ability to interact with the public, supervisors, and coworkers . . . appears to be mild impairment due to anxiety.

AT 22.

The ALJ cited a November 2010 consultative examination by psychologist Dr. Troy Ewing, who found plaintiff to have "average memory functioning [and] primarily average intellectual functioning with borderline intellectual functioning in verbal comprehension solely." AT 929. Dr. Ewing further found plaintiff to have "no difficulty" understanding, remembering and carrying out simple and complex instructions; maintaining attention and concentration; with pace and persistence; and enduring the stress of the interview. AT 929. He found that plaintiff "is likely to have mild difficulty adapting to changes in routine work-related settings and will do better with non-verbal directions." AT 929. Dr. Ewing continued that, "[b]ased upon observations of current behavior and reported psychiatric history, the claimant's ability to interact with the public, supervisors, and coworkers there appears to be mild impairment due to anxiety." AT 929.

An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523. Here, lacking psychological records for the relevant time period, plaintiff has not met his burden to show his anxiety and dysthymia disorder were severe.

In determining RFC, the ALJ was not required to restate that the record contained no mental health records for the relevant period. As to cognitive impairments, the ALJ noted in the RFC analysis that plaintiff's mental impairment was initially determined to be non-severe by Dr.

6

Mateus; however, upon reconsideration, Dr. Brode determined that plaintiff "had severe mental impairment and could perform simple work with social considerations." AT 26; see AT 100-101. The ALJ also considered the opinion of Dr. Ewing, discussed earlier, and concluded that there was "no basis to erode the claimant's RFC for any mental impairment." AT 26. The court finds no error at step two or four concerning plaintiff's mental health.

    2. Hand and spine issues

As to plaintiff's musculoskeletal complaints, the ALJ summarized the medical evidence bearing on the step two decision that these were not severe impairments. (AT 19-22.) The ALJ concluded: "While the diagnostic studies and exams showed musculoskeletal changes, none of his alleged musculoskeletal impairments significantly affected his ability to perform basic work activity during the period under consideration." AT 22.

"[E]ven assuming the ALJ's step two finding is somehow sound," plaintiff argues, "the ALJ erred by failing to discuss or consider limitations posed by all Plaintiff's impairments for purposes of establishing Plaintiff's RFC and making a finding at step five." ECF No. 17 at 10; see AT 24-27. Specifically, plaintiff contends, the ALJ never directly addressed plaintiff's chronic ulnar neuropathy and chronic compression fracture of the spine, but improperly relied on a generalized "review technique" in making the RFC assessment. Id.

When an ALJ considers limitations resulting from an impairment in the RFC, any error in not considering the impairment to be severe is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); but see Betts-Cossens for Betts v. Berryhill, 2017 WL 2598889, *7 (D. Hawai'i June 15, 2017) (step two error as to severity of psoriasis was not harmless where "[n]owhere in the ALJ's opinion does she specifically consider the limitations posed by the psoriasis or discuss it in any detail").

In the RFC discussion, the ALJ noted plaintiff's May 2008 complaint of numbness and pain in his left hand, wrist, and forearm. AT 26, 328. The ALJ also cited Dr. Mitgang's 2013 opinion that plaintiff was capable of performing a full range of light exertional work. AT 26, 103-104. However, the RFC analysis does not address the limitations suggested by, e.g., 2007 records noting wrist pain, numbness, tingling, and the use of a hand brace (AT 293), plaintiff's

7

reports of wrist and elbow pain (AT 305), "some ulnar nerve neuritis" (AT 307, 310), "complaints of intermittent numbness" in the hand and "pain on the lateral side of arm up to elbow" (AT 308, 311, 314), or a long-term treatment goal to "achieve functional range of motion of the left wrist/forearm" (AT 315). It does not consider 2008 records of "ongoing left wrist and hand issues" (AT 338), and surgery on the left hand for nerve and tendon entrapments (AT 346). Nor does it address 2009 records noting that plaintiff's "ulnar nerve symptoms appear to be mild" (AT 349) and that plaintiff "has achieved a good range of motion with good strength" but still had "residual numbness" in his left hand. AT 351. Because the ALJ's opinion nowhere specifically considers the limitations posed by plaintiff's hand and wrist issues, the court finds error in this regard and remands for a proper consideration of this evidence.

As to spinal issues, in step two, the ALJ noted a November 2008 MRI of plaintiff's cervical spine showing only mild degenerative changes and his 2009 complaints of low back pain and neck pain, for which he saw a chiropractor. AT 21. Plaintiff's spinal compression fracture predates 2003 medical notes that found a "probable old compression injury of the L1 vertebral body, but no other significant pathology identified." AT 847. A 2009 MRI report found the fracture unchanged since 2007. AT 490. As there is little else in the record concerning this issue, the court concludes that the ALJ sufficiently considered any limitations posed by plaintiff's pre-2003 spinal compression injury.

C. Vocational Expert

Plaintiff next claims that the ALJ was required to have a vocational expert testify at step five because the RFC finding included "vaguely specified" environmental limitations. In relevant part, the RFC stated: "Due to [claimant's] seizure activity, he could never climb ladders, ropes or scaffolds. He had to avoid working near hazards (machinery, heights, etc.)." Plaintiff argues that the second sentence is unclear as to "what specific hazards the RFC contemplates." (ECF No. 17 at 13.) Citing the Social Security Ruling (SSR) 96-9 on environmental restrictions[3], plaintiff

---

[3] SSR 96-9 explains the SSA's policies regarding the impact of a RFC assessment for less than a full range of sedentary work on an individual's ability to do other work. It provides in part:

An "environmental restriction" is an impairment-caused need to avoid an environmental condition

8

argues that because he was precluded from unspecified workplace hazards, "the occupational base for less than a full range of sedentary work may . . . be significantly eroded," requiring the testimony of a VE.

The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers v. Sec'y of Health and Human Servs., , 846 F.2d 573, 577-78 (9th Cir. 1988). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities. Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th

---

in a workplace. Definitions for various workplace environmental conditions are found in the SCO; e.g., "extreme cold" is exposure to nonweather-related cold temperatures.

In general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards. The "hazards" defined in the SCO are considered unusual in unskilled sedentary work. They include: moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals. Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base.

Since all work environments entail some level of noise, restrictions on the ability to work in a noisy workplace must be evaluated on an individual basis. The unskilled sedentary occupational base may or may not be significantly eroded depending on the facts in the case record. In such cases, it may be especially useful to consult a vocational resource.

Restrictions to avoid exposure to odors or dust must also be evaluated on an individual basis.

9

Cir. 1991); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

"The ALJ can use the [G]rids without vocational expert testimony when a non-exertional limitation is alleged because the [G]rids provide for the evaluation of claimants asserting both exertional and non-exertional limitations. But the [G]rids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citations and quotation marks omitted). In such instances, the testimony of a vocational expert is required.

Here, the RFC stated that due to his seizures, plaintiff should not work on ladders, ropes or scaffolds and should avoid working near hazards such as machinery, heights, "etc." There is no reason to believe the "etc." signified noise, odors, or dust – the only environmental limitations that SSR 96-9p requires to be "evaluated on an individual basis." Moreover, SSR 85-15 explains: "A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exist at all exertional levels." Based on the above and the existing record, the court concludes that the ALJ did not err in applying the grids. See Bragdon v. Astrue, 2010 WL 1342684, *7 (E.D. Cal. March 31, 2010) (ALJ did not err in applying grids to plaintiff with seizure precautions in RFC).

D. Side Effects of Medication

Lastly plaintiff asserts that, although he was prescribed phenobarbital, a powerful anticonvulsant, and propranolol, a beta blocker, the ALJ erroneously failed to consider these medications' side effects or any associated functional limitations.

Medical notes indicate that multiple times, plaintiff was taking phenobarbital when he was arrested or investigated for intoxication, even though he never drank alcohol. AT 271-272, 284, 358, 370. In reciting the medical evidence, the ALJ noted plaintiff's 2005 arrest for intoxication though he did not drink, and elsewhere noted plaintiff's testimony that "[i]t was his seizure

medication and not alcohol that caused his DUI." AT 20-21, 25.  The ALJ also considered that plaintiff was medically cleared to drive in 2009.  AT 25, 48-49, 284 (2006 record in which neurologist "see[s] no reason medically he cannot drive" even after arrest).  Aside from the arrests, there is little evidence that plaintiff's medications caused disabling side effects.  See AT 885 (neurologist's 2003 note that plaintiff's dosage of phenobarbital cased "no side effects.").  Thus the court finds no error in this regard.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 20) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: September 13, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 beals008.ssi.ckd